[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Both parties appeared and were represented by counsel. All statutory stays having expired, the court has jurisdiction.
Having heard the evidence, the court finds as follows:
The plaintiff, whose maiden name was Walker, and the defendant intermarried at Winsted, Connecticut on June 15, 1974; that the plaintiff has resided continuously in Connecticut for a period of one year next preceding the date of the filing of this complaint; that there are no minor children issue of the marriage; that the parties have two adults sons, issue of the marriage; that there were no other minor children born to the plaintiff since the date of the marriage of the parties; that neither party to this action is or did receive assistance from the State of Connecticut or any local agency thereof; that the marriage has broken down irretrievably and that there is no hope of reconciliation.
The plaintiff attributes the breakdown of the marriage to a breakdown of communications between the parties; their disagreement as to how to raise their children and the strain it caused on the parties; that defendant was not supportive of plaintiff when her stepfather passed away although he was supportive when her father and mother passed away; that the defendant was not affectionate and began to reject the plaintiff sexually about five to six years ago; that, although she wanted to keep the marriage going, the defendant refused to continue marriage counseling and did not cooperate in continuing their marriage; that they always argued and that on a trip home from North Carolina, defendant told plaintiff he no longer loved her.
The defendant testified that the plaintiff was not affectionate; that she also rejected his sexual advances to her on occasion over the last three to four years; that the plaintiff only agreed to have sex with him three times in the last three years although he wanted it more often; that the parties just grew apart and went in different directions. He denied being indifferent to her on her stepfather's death. If he rejected her it was because he was in shock over said death. CT Page 11000
During May 1999 the parties agreed to a trial separation. Each party claims the other made no effort during the separation to heal the marriage. While separated the plaintiff asked defendant if he had any objection to her going out with defendant's friend Ray Perry. He said no.
In July 1999, plaintiff started this action by having papers served on the defendant. He claims he was shocked as he thought that the parties would get together.
The plaintiffs relationship with Ray Perry increased to where she spent much time with him at his residence and stayed overnight with him on occasion. Plaintiff claims that this relationship had no affect on the breakdown of the marriage.
In September 1999 after the defendant was served dissolution papers by the plaintiff, he began having sex with Awatef Elsamaloti (Cleo). He denies any relationship with Cleo before the dissolution proceedings or with any other women.
It is obvious that the marriage of the parties has broken down irretrievably with no hope for reconciliation. I find both parties equally at fault for the breakdown of their marriage.
The plaintiff, who was born May 30, 1953, appears to be in good health. After graduating high school, plaintiff attended Barrington College in Vermont for 1-1/2 years studying musical appreciation. She stopped attending said college after she met the defendant whom she married one year later. She does not appear to have any special skills except for secretarial and receptionist employment.
After her marriage to the defendant, the plaintiff worked full time as a waitress. After the children were born she ceased such work and was unemployed until her children were in school. She then began part time employment in the defendant's office. In 1993 she became fully employed by the Faria Corp. in Montville, Connecticut. She ceased such employment in 1998 as she wanted employment closer to her home in Griswold, Connecticut.
She then became employed by Consumer's Interstate for two months when she was laid off. After six months of unemployment, she became employed at Bob's Discount Furniture where she is still employed. Her gross weekly income is $360.00 and her net weekly income after deducting federal and state taxes, health insurance of $27.00 and retirement of $30.00 is $225.00. CT Page 11001
The defendant, who was born on November 30, 1951 is a diabetic on oral medication. Otherwise, he appears to be in good health. He has a college degree in physical education. Although the defendant was employed at the time of the marriage, he changed employment a few years after the marriage. In 1978 he became and remains to this day an Independent Insurance Contractor for Nationwide Insurance Co. His income consists of commissions he earns on insurances he sells. Also he receives deferred compensations depending on what he sells and the loss ratio he experiences from his clients. According to defendant's financial affidavit dated July 18, 2000 defendant grosses $1,539.090 per week and has a net weekly income of $1,116.05.
Defendant draws $900.00 per week from his business but adds an additional $216.05 to his weekly income, which he claims is the amount his company pays for some of his personal expenses.
In 1999 defendant's net income from his business was $80,017.00 while in 1998 it was $90,670.00 and in 1997 $84,054.00. (See Plaintiffs Exhibits 23, 22 and 21.) Defendant attributes the decrease in his 1999 income from his 1998 income to a change in the percentage of commission awarded by Nationwide Insurance Company and increasing competition in the insurance industry.
In 1979 the parties purchased the marital home located at 26 Stetson Road, Norwich, Connecticut. The plaintiff claims its value is $175,000.00. Said property is subject to a mortgage of $91,000.00. A market analysis of the property values the property between $170,000.00 and $180,000.00. Plaintiffs Exhibit 2. Both parties agree to this value.
In 1986 the parties paid $80,000.00 for an addition on said property which included an inside swimming pool. In 1995 the parties refinanced the mortgage. $26,000.00 of said funds were used to purchase 230 Salem Turnpike where the defendant operates his business. The market analysis (Plaintiffs Exhibit 2) values this property at $148,000.00 to $154,000.00. Again both parties agree to this value. Said property is subject to a mortgage of $114,000.00.
The parties also purchased lot 73 in Salem, Connecticut for $35,000.00. It is subject to a mortgage of $21,000.00. Plaintiff resides on said lot and is making the mortgage payments.
The plaintiff makes no claim to the Salem Turnpike and Salem property but wants the Stetson Street property. She wants the defendant to pay $26,000.00 of the mortgage on said property as said sum was used to purchase 230 Salem Turnpike. CT Page 11002
The plaintiff has life insurance policies with Nationwide with face value totaling $625,000.00. The current cash value of said policies is $34,562.00. The plaintiff, who is the named beneficiary on said policies wishes to remain as the beneficiary. The defendant has a $25,000.00 life insurance policy with Nationwide Insurance Company. However, according to defendant's financial affidavit, the total life insurance on the plaintiff with Nationwide Insurance Company is $67,000.00. The alleged cash value of said insurance is $1,922.00.
The plaintiff has an IRA valued at $33,000.00 and a 401K valued at $7,000.00. She also has Eastern Savings and Loan accounts totaling $330.00, a Bristol Teacher's Federal Credit Union account valued at $750.00 and a 1993 Chevrolet Suburban valued at $10,000.00.
The defendant has an IRA valued at $45,000.00 and a Nationwide Deferred Compensation Plan valued at $325,242.00 and an Extended Earnings valued at $198,232.00. Said funds may increase annually based on commissions the defendant earns. The defendant does not contribute any of his income to said fund.
The defendant also owns a Ford Pickup which he uses to drive to and from work. He leases an automobile for use in his business, the cost of which he pays out of his business income.
The parties disagree on how much of their debts were family related. The plaintiff claims about $3,000.00 are so related while the defendant claims $13,000.00 are family related.
The defendant testified that he feels all marital assets should be divided equally and is agreeable to paying alimony to the plaintiff for ten years when the mortgages on the Stetson property will be paid off.
After considering all the provisions of Connecticut General Statutes (C.G.S.) §§ 46b-62, 66a, 81 and 82 and the evidence, judgment is entered dissolving the marriage of the parties on the grounds of irretrievable breakdown. It is ordered:
1. The defendant shall pay to the plaintiff weekly alimony in the sum of $450.00 for a period of 15 years, plaintiffs remarriage or the death of the plaintiff whichever is the first to occur. Said alimony shall be modifiable as to amount but not as to term. In the event of plaintiffs cohabitation with an unrelated male pursuant to C.G.S. § 46b-86(b), said alimony may be terminated or modified in accordance with said statute.
2. The defendant shall pay the costs for any Cobra medical coverage for which he may be entitled under the plaintiffs health insurance. CT Page 11003
3. The defendant shall transfer to the plaintiff all of his interest in the marital residence located at and known as 26 Stetson Road, Norwich, Connecticut, subject to any mortgages thereon. The plaintiff shall pay said mortgages and hold the defendant harmless on said mortgages except that the defendant shall pay that portion of the mortgage which was used to purchase 230 Salem Turnpike.
4. The plaintiff shall transfer to the defendant all of her interest in 230 Salem Turnpike, Norwich, Connecticut and Lot #73 located in Salem, Connecticut. The defendant shall pay all mortgages presently on said properties and hold the plaintiff harmless on same.
5. The parties shall pay equally the marital debts totaling $12,000.00.
6. The plaintiff shall keep her IRA and 401K accounts free of any claim by the defendant.
7. The defendant shall keep his IRA account free of any claim by the plaintiff.
8. The defendant shall name the plaintiff as beneficiary of his $282,000.00 life insurance policy with Nationwide Life Insurance for so long as he has any alimony obligation to the plaintiff pursuant to this judgment.
9. The defendant shall transfer to the plaintiff by whatever documents are required one-half of the present value of the Nationwide Deferred Compensation Plan and the Extended Earnings. The plaintiff shall be named as survivor beneficiary under the plans in the event the defendant predeceases the plaintiff prior to and or after the commencement of receipt of benefits. If this results in a decrease in the defendant's benefits, the plaintiff shall reimburse the defendant for such difference as each payment is received.
The court shall return jurisdiction until the necessary documents are prepared and executed in accordance with this decree, the intention of the parties and the prerequisites of Nationwide Insurance Co. The plaintiff shall be responsible for having the necessary documents prepared.
10. The parties shall mutually agree to a division of their personal property located in the marital home.
The court shall retain jurisdiction in the event the parties cannot mutually agree upon a division of said property. CT Page 11004
11. The defendant shall own all the furniture and equipment used in the business at 230 Salem Turnpike.
12. The defendant shall pay to the plaintiff towards her attorney's fees the sum of $2,500.00.
Vasington JTR